**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **NICHOLAS C CLARKSON,** | **:** | |
| | **:** | |
| **Plaintiff,** | **:** | |
| | **:** | **NO. 5:17-cv-00120-CAR-CHW** |
| **VS.** | **:** | |
| | **:** | |
| **Warden GREGORY MCLAUGHLIN,** | **:** | |
| *et al.,* | **:** | |
| | **:** | |
| **Defendants.** | **:** | |
| ─────────────────────────── | **:** | |

## ORDER

This case is currently before the Court for preliminary screening as required by the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A(a). Plaintiff Nicholas Clarkson, an inmate confined at Telfair State Prison, filed the above-captioned proceeding seeking relief under 42 U.S.C. § 1983. ECF No. 1. At the time of filing, Plaintiff also moved to proceed without prepayment of the district court's filing fees under 28 U.S.C. § 1915. ECF No. 2. Plaintiff was granted *in form pauperis* status on April 14, 2017, and ordered to pay an initial partial filing fee. ECF No. 6. Plaintiff has now paid the fee and filed a recast complaint as ordered, however, upon preliminary review, Plaintiff's complaint is **DISMISSED without prejudice** for failure to state a claim.

### I.     Motion to Proceed In Form Pauperis

Although Plaintiff is allowed to proceed *in forma pauperis* in this action, Plaintiff is still obligated to pay the full balance of the filing fee, in installments, as set for in § 1915(b)

and explained below.  It is thus requested that the **CLERK** forward a copy of this **ORDER** to the business manager of the facility in which Plaintiff is incarcerated so that withdrawals from his account may commence as payment towards the filing fee.

A. Directions to Plaintiff's Custodian

It is hereby **ORDERED** the warden of the institution wherein Plaintiff is incarcerated, or the Sheriff of any county wherein he is held in custody, and any successor custodians, each month cause to be remitted to the Clerk of this court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the remaining portion of the filing fee ($308.00) has been paid in full. In accordance with provisions of the Prison Litigation Reform Act, Plaintiff's custodian is hereby authorized to forward payments from the prisoner's account to the Clerk of Court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00.   It is further **ORDERED** that collection of monthly payments from Plaintiff's trust fund account shall continue until the remaining $3.08.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

A. Plaintiff's Obligations Upon Release

Pursuant to provisions of the Prison Litigation Reform Act, in the event Plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, he shall remain obligated to pay any balance due on the filing fee in this proceeding until said amount has been paid in full; Plaintiff shall continue to remit monthly payments as

required by the Prison Litigation Reform Act. Collection from Plaintiff of any balance due on the filing fee by any means permitted by law is hereby authorized in the event Plaintiff is released from custody and fails to remit payments. Plaintiff's complaint is subject to dismissal if he has the ability to make monthly payments and fails to do so.

## II.     Preliminary Review of Plaintiff's Complaint

### A. Standard for Preliminary Review

Under the PLRA, the district courts are obligated to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. *See* 28 U.S.C. § 1915A(a). Screening is also required, under 28 U.S.C. § 1915(e), when the plaintiff is proceeding IFP. Both statutes apply in this case, and the standard of review is the same. When conducting a preliminary review, the district court must accept all factual allegations in the complaint as true and make all inferences in the plaintiff's favor. *See Brown v. Johnson*, 387 F.3d 1344, 1347 (11th Cir. 2004). *Pro se* pleadings are also "held to a less stringent standard than pleadings drafted by attorneys," and a *pro se* compliant is thus "liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam). The district court, however, cannot allow a plaintiff to litigate frivolous, conclusory, or speculative claims. As part of the preliminary screening, the court shall dismiss a complaint, or any part thereof, prior to service, if it is apparent that the plaintiff's claims are frivolous or if his allegations fail to state a claim upon which relief may be granted – i.e., that the plaintiff is not entitled to relief based on the facts alleged. *See* § 1915A(b); § 1915(e).

**B. Background and Discussion**

The events underlying this complaint began in 2014 at Autry State Prison when Plaintiff was informed by a classification committee that his institutional file indicated that he was a member of the "westside gangster crips." ECF No. 7 at 7. Plaintiff attempted, without success, to contest the accusation to the committee and then filed a grievance. In response, Plaintiff was told that he was validated as a westside gangster crip in 2009 while confined in Valdosta State Prison. ECF No. 7 at 8. His appeal was denied for procedural reasons.

Plaintiff attempted to resolve the issue by speaking to the Deputy Warden of Care and Treatment at Autry State Prison. He was referred to Sargent Bell, who appears to have offered Plaintiff a procedural method of renouncing his alleged gang membership. ECF No. 9. Plaintiff contends he was unable to complete the process because he would have to (1) affirm that he was in a gang and (2) name high ranking gang members. ECF No. 9. Plaintiff then brought the issue to Deputy Warden of Security Terrell who advised Plaintiff being labeled a gang member, or a Security Threat Group, "greatly impacts security" level assignment of an inmate. ECF No. 7 at 10. Plaintiff was subsequently transferred to Macon State Prison, "a level five security prison where gang violence is more apparent." ECF No. 7 at 10. Plaintiff ultimately filed a state civil action which was denied for failure to state a claim.

Plaintiff now seeks redress in federal court through a Section 1983 action and contends that his false designation as a gang member has deprived him of a liberty interest

4

without due process of law. Plaintiff complains that as a result of the label he is being discriminated against, his character has been defamed, and he has essentially been convicted of a crime without being indicted or being able to exercise his right to a trial. ECF No. 7 at 11. His "life's major activities" have also been adversely impacted as his his relationship with his family has been strained. Finally, Plaintiff has been denied vocational programs available to inmates with a lower security designation which will prevent Plaintiff from learning a trade or skill and in turn adversely impact his ability to reintegrate into society.

i. *Fourteenth Amendment Due Process*

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 47 (1988) (citations omitted). Plaintiff's classification as a gang member and transfer to a less accommodating prison are insufficient to constitute a constitutional deprivation by themselves. It is has long been recognized that the Constitution does not "guarantee that the convicted prisoner will be placed in any particular prison." *Meachum v. Fano*, 427 U.S. 215, 223 (1976). The assignment to a particular prison and a transfer from one prison to another "is not subject to an audit under the Due Process Clause, although the degree of confinement in one prison may be quite different from that in another." *Id*. 223-24. This is true even when the transfer visits a "'grievous loss' upon the inmate" and extends to a prisoner's "classification and eligibility for rehabilitative

5

programs."   *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976).

Although it is recognized that confinement in a restrictive environment does not by implicate an interest created by the Due Process clause itself, a prisoner may be able to invoke due process protections because "States may under certain circumstances create liberty interests which are protected by the Due Process Clause."   *Sandin v. Conner*, 515 U.S. 472, 483, 487 (1995) (citing Board of *Pardons v. Allen*, 482 U.S. 369 (1987)).   The Eleventh Circuit has recognized two scenarios in which a prisoner has a liberty interest protected by due process: (1) when the conditions of confinement are "so severe that [they] essentially exceeds the sentence imposed by the court" and (2) "where the state has consistently provided a benefit to a prisoner and deprivation of that benefit imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"   *Woodson v. Whitehead*, 673 F. App'x 931, 933 (11th Cir. 2016) (quoting *Kirby v. Siegelman*, 195 F.3d 1285, 1290-91 (11th Cir. 1999)).   The "touchstone" of whether inmates have a state-created liberty interest in avoiding restrictive conditions of confinement is "the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'"   *Wilkinson v. Austin*, 545 U.S. 209, 223 (quoting *Sandin*, 515 U.S. at 484).

Taking Plaintiff's allegations as true and drawing inferences in his favor, he alleges that his conditions of confinement differ from the "ordinary incidents of prison life" because he is being deprived of vocational and other opportunities.    State created liberty interests, however, are generally limited to freedom from restraint as they must be atypical

6

and constitute a significant hardship. It is an ordinary incident of prison life for a prisoner to be transferred to another facility and lose "access to vocational, educational, recreational, and rehabilitative programs.'" *McKune v. Lile*, 636 U.S. 24, 39 (2002) (quoting *Hewitt v. Helms*, 459 U.S. 460, 467, n. 4 (1983)). Even when a prisoner has become accustomed to a more comfortable facility, his expectation to remain there "is too ephemeral and insubstantial to trigger a procedural due process protection as long as prison official have discretion to transfer him for whatever reason or for no reason at all." *McKune*, 536 U.S. at 38 (quoting *Meachum*, 427 U.S. at 255).

The Eleventh Circuit has routinely recognized that prison officials in Georgia have discretion to transfer inmates and that "[a]n inmate has no [state created] liberty interest in a particular classification, prison assignment, or transfer even if the inmate . . . experiences more burdensome conditions than before." *West v. Higgins*, 346 F. App'x 423, 426 (11th Cir. 2009); *Kramer v. Donald*, 286 F. Appx' 674 (11th Cir. 2008) (no liberty interest in prison classification); *Slocum v. Ga. State Bd. Of Pardons and Paroles*, 678 F.2d 940, 941 (11th Cir. 1982) (no liberty interest in parole). Rather, "[i]t is plain that the transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." *Al-Amin v. Donald*, 165 F. App'x 733, 738-39 (11th Cir. 2006) (per curiam) (alteration in original) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)). Accordingly, Plaintiff's classification as a gang member, transfer, and loss of favorable prison conditions do not implicate a liberty interest. Nor do Plaintiff's allegations that his

classification has caused strains on his family relationship and unneeded stress.

Plaintiff has not alleged facts suggesting he faces risks to his safety or health due to being labeled a gang member, and has not alleged that his confinement in Autry State Prison is more restrictive than can be expected of the conditions found in any high security level prison. Plaintiff asserts that the conditions he experiences are atypical, but legal conclusions are insufficient, and Plaintiff has failed to state a claim upon which relief can be granted.

*ii.*     *Fifth and Sixth Amendment*

Plaintiff also asserts that his classification as a gang member essentially amounts to a conviction because of the consequences he faces as a result of the designation. "The protections provided by the Sixth Amendment are explicitly confined to 'criminal prosecutions.'" *Austin v. U.S.*, 509 U.S. 602, 607 (1993). The Georgia Department of Corrections' decision to classify Plaintiff as a gang member does not constitute a criminal prosecution. *See e.g. Sparks v. Foster*, 241 F. App'x 467, 471 (10th Cir. 2007) (affirming dismissal of sixth amendment claim because classification as a gang member is an administrative decision). Consequently, Plaintiff has failed to state a Sixth Amendment Claim. Plaintiff also raises a Fifth Amendment Claim, presumably based on due process. "The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States." *Dusenbery v. U.S.* 534 U.S. 161, 166 (2002). Plaintiff's claims concern state officials. Further, to the extent that Plaintiff may be raising self-incrimination claims, he cannot succeed as he denied

membership in a gang, was not compelled, and no statements have been introduced in a criminal case. Accordingly, Plaintiff has failed to state a Fifth Amendment claim.

### iii. Equal Protection

Plaintiff also asserts that his transfer to Macon State Prison and the concomitant restrictions to his environment constitute a violation of his right to equal protection under the law. The factual basis or theory behind this assertion is unclear as Plaintiff has only baldly stated a violation of Equal Protection. "To survive a motion to dismiss his equal protection claim, Jackson must plausibly allege two elements: (1) that "he is similarly situated with other prisoners who received" more favorable treatment; and (2) that "his discriminatory treatment was based on some constitutionally protected interest," such as race, religion, or national origin." *Jackson v. Brewton*, 595 F. App'x 939, 943 (11th Cir. 2014) (percuriam) (citations omitted). Plaintiff has not alleged facts—or even conclusions—supportive of either element. Therefore, Plaintiff has failed to state an equal protection claim.

### iv. Defamation

Finally, Plaintiff asserts that labelling him as a gang member constitutes defamation. "Defamation, by itself, is a tort actionable under the law of most State, but not a constitutional deprivation." *Siegert v. Gilley*, 500 U.S. 226, 233 (1991); *Garcia v. Miami Police Dep't*, 336 F. App'x 858, 860 (11th Cir. 2009) (per curiam) ("[A]llegations of defamation, on their own, are insufficient to state a federal claim."). Rather, "a plaintiff claiming a deprivation based on defamation by the government must establish the fact of

the defamation 'plus' the violation of some more tangle interest," before such a claim implicates a constitutionally protected interest. *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1302 (11th Cir. 2001) (citing *Paul v. Davis*, 424 U.S. 693, 694 (1976)); *Smith ex rel. Smith v. Siegelman*, 322 F.3d 1290, 1297 (11th Cir. 2003) ("A person's interest in reputation alone . . . is not a protected liberty interest within the meaning of the due process clause."). To establish such a liberty interest, "the individual must be not only stigmatized but also stigmatized in connection with a denial of a right or status previously recognized under state law." *Smith*, 322 F.3d at 1296 (quoting *Cannon*, 250 F.3d at 1302).

The deprivation Plaintiff alleges does not amount to the denial of a relevant right or status sufficient to state a constitutional claim. *See e.g. Siegert*, 500 U.S. 226 (explaining that costs resulting from injury to reputation are not recoverable in a Section 1983 action). With the dismissal of Plaintiff's federal claims, "there remains no independent original federal jurisdiction to support the Court's exercise of supplemental jurisdiction over the state claims." *Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1352 (11th Cir. 1997). Accordingly, Plaintiff's state law claims are dismissed without prejudice. *See Garcia v. Miami Beach Police Dept.*, 336 F. App'x 858, 860 (11th Cir. 2009) (dismissing defamation claim for lack of jurisdiction in light of plaintiff to state a constitutional claim).

## II.    CONCLUSION

Pursuant to the above, Plaintiff has failed to state Fourteenth Amendment, Fifth Amendment, Sixth Amendment, Equal Protection or constitutional defamation claim. The court declines to exercise jurisdiction over Plaintiff's remaining state law claims.

Accordingly, his complaint is **DISMISSED without prejudice.**

**SO ORDERED**, this 18th day of August, 2017

<u>S/ C. Ashley Royal</u>
C. ASHLEY ROYAL, SENIOR JUDGE
UNITED STATES DISTRICT COURT